*Hannah Toy* was intended to defraud, and not that *to* her; they report their *belief*, instead of saying that the fact is or is not so; and instead of awarding that the premises *are* liable, which is the very question in dispute, they express an opinion that in equity they ought to be so. Further, it surely is no informality to award a sum to be due by *Peter Hoffman the defendant*, when he is no party to the suit, when that question was never submitted to the referees, and when it is confessed to be a different sum from that which *Snyder* actually recovered from *Hoffman* in a suit at law. This part of the report exposes the premises to two debts, or certainly to a larger one than was due.

*The Court*, after the argument, being of opinion that the report was merely informal, recommitted it to the same referees to correct the informality; who on the next day reported generally that they found for the plaintiff with six pence damages.

*Condy* and *Hopkinson* now objected to filing the second report, as the court had no authority to recommit without consent of parties. But,

Per CURIAM. In the case of *Eckart's administrators* v. *The executors of Vanderen* there was a recommitment without consent after argument; and for these thirty years such recommitments have been frequent, when the report has been informal.

Judgment for the Plaintiff
on the *second* report.

1803.

SNYDER'S
Lessee
*v.*
HOFFMAN.

---

TURNBULL *against* The Commonwealth.

*I*NGERSOLL for the plaintiff, asked the court to give this cause a precedence upon the trial list agreeably to rule 52, 7th *January* 1789, and rule 53, 8*th April* 1789, the commonwealth being a party and interested in the event of the suit.

*M. Levy* who was concerned in other causes, objected to the preference, inasmuch as the rules embraced the case of commonwealth plaintiff, and not defendant. The preference he said was

*Monday*,
September
5th.
The court
will not grant
precedence
to a cause in
which the
common-
wealth is in-
terested, un-
less it is ask-
ed by the
common-
wealth.

1803.

Turnbull
v.
The Commonwealth.

an odious one; it had arisen from that very unjust partiality which in England is shewn to the business and rights of the crown, to the vast injury of the subject; and therefore should never be extended by a free construction.

*M'Kean* (attorney general) said he had never asked a preference in such a case; nor did he now; but he did not object to it.

*Dallas* for the plaintiff replied that the ground of the rule had been misconceived by *Levy;* it was founded, he said, in this simple and equitable principle, that the business of the community, in which all are concerned, should be transacted in preference to that of an individual which concerns but one; it was therefore as just a provision in a case like this, as in the case of commonwealth plaintiff.

The Court held the matter under consideration until the next morning, when they said that as the attorney general did not ask the preference they would not grant it.

---

Saturday,
September
10th.

Witnesses subpœnaed though not examined, and examined though not subpœnaed, are entitled to payment. A party may call as many witnesses as he thinks necessary to make out his case; the court will not interfere unless he is guilty of oppression.

## De Benneville *against* De Benneville.

IN this cause, which was an action of trespass for mesne profits, a verdict was found for the plaintiff for 200 dolls. and the prothonotary taxed the costs of witnesses at 162 dolls. From this bill the defendant appealed.

*Rawle* for the defendant alleged that eight of the witnesses subpœnaed by the plaintiff had been neither examined nor called by him, and that two others were called and examined solely by the defendant; and he prayed the opinion of the court whether in a cause in which a plaintiff knows he must recover something, and defendant has nothing to oppose to his demand, he may oppress his antagonist by summoning and charging the expense of witnesses whom he never calls to the book.

*Dickerson* for the plaintiff stated that several of the witnesses were brought to prove the annual value of the estate and some