## St. Edmond's Federal Savings Bank
## v. Victor Custom Homes Inc.

146

*David A. Koss,* for plaintiff.
*Phillip D. Berger,* for defendant.

ALBRIGHT, *J.,* June 24, 2010—The Defendants, Victor Custom Homes Inc. (VCH), James Hoffman and Karen Hoffman appeal from the trial court's order, dated

June 22, 2009, denying the defendants' motion for post-trial relief.[1] For the reasons that follow, the undersigned believes that the order aforementioned should be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of VCR's default on a $2,115,036 loan provided to it by the plaintiff and acknowledged by a promissory note, dated November 1, 2006, signed by VCH's president, James Hoffman. The defendants herein, the Hoffmans, each agreed, pursuant to a certain surety agreement, also hearing the date of November 1, 2006, to guarantee payment of the plaintiff's loan to VCR, but failed to cure the latter's default, resulting in the plaintiffs securing of a judgment entered by confession against all of the defendants in the amount of $2,482,582.72. Following the entry of judgment against them on July 25, 2008, neither VCR nor the Hoffmans made any effort to either strike or open the judgment which was executed upon by the plaintiff through a writ of execution issued on September 19, 2008.

Thereafter, in response to the writ and levy made upon VCR's property located at 621 Great Springs Road, Bryn Mawr, Pennsylvania, the real estate and premises at that

---

1. The defendants' notice of appeal identifies the order appealed from as " the order entered in his matter on March 18, 2009." The undersigned's order, dated March 17, 2009, and docketed on March 18, 2009, fixed the fair market value of real property located at 621 Great Springs Road, Bryn Mawr, Pennsylvania and declaired a deficiency judgment in the sum of $389,098.54. The Superior Court issued an order, dated October 14, 2009, in which it interpeted the order from which the defendants were appealing as the trial court's order, dated June 22, 2009, denying the defendants' motion for post-trial relief.

address was sold to the plaintiff at sheriff's sale for costs ($2,741.39) on November 19, 2008. Since the proceeds of the sale were insufficient satisfy the judgment outstanding about the defendants, the plaintiff, on February 10, 2009, pursuant to the Deficiency Judgment Act,[2] filed a petition to fix fair market value of real property, formerly owned by VCH, at $2,200,000. See *e.g.,* 42 Pa.C.S. §8103. In addition to fixing the fair market value of the real estate, the plaintiff sought to obtain a deficiency judgment against the defendants in the amount of $389,098.36, including post-judgment interest at the statutory rate of 6 percent ($47,723.01), real estate taxes due, totaling $13, 823.81, and costs of $44,969 incurred by the plaintiff in completing the construction of the property's single family residence and required in order to obtain the certificate of occupancy needed to make the property *marketable for sale.*

In response to the plaintiff's petition, and, for the first time since the filing of the underlying complaint in confession of judgment, the defendants appeared and filed an answer to the subject petition. Thereafter, in accordance with the Pennsylvania Rules of Civil Procedure governing petitions to fix value and deficiency judgments,[3] the undersigned conducted a hearing at which

---

2. 42 Pa.C.S. §8103 *(a) General rule.*—Whenever any real property is sold, *directly or indirectly,* to the judgment creditor in execution proceedings, and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold.

3. Pa.R.C.P. 327-3291: Pa.R.C.P. 3285 ("If an answer is filed which denies the allegations in the petition as to the fair market values, the

all the parties were present and represented by counsel. The trial court's order, dated March 17, 2009, resolved the issues raised by the plaintiff providing that:

"[I]t is hereby ordered that the fair market value of the real property located at Great Springs Road, Bryn Mawr, Pennsylvania is determined to be $2,200,000.

"It is further ordered that there is a deficiency due from Victor Custom Homes Inc., James Hoffman and Karen Hoffman, jointly and severally, to St. Edmond's Federal Savings Bank in the sum of $389,098.54[4] as of January 2, 2009 in the above matter.

"It is further ordered that the docket shall reflect this deficiency as a deficiency judgment *entered* against Victor Custom Homes Inc., James Hoffman and Karen Hoffman, jointly and severally, in the sum of $389,098.54 as of January 2, 2009." (Tr. ct. order, 3/17/09.) (emphasis added)

Taking exception to the trial court's ruling, the defendants filed a motion for post-trial relief on March 25, 2009, which was thereafter briefed by the parties and argued before the undersigned, who denied the motion on June 22, 2009. That decision was appealed by the defendants on July 20, 2009, and, following a number of administrative delays, the defendants, in response to

---

prior lien amounts or the entitlement of the petitioner to any special allocation, the trial shall be limited to such of those issues as are raised by the answer, which shall be heard by a judge sitting without a jury in accordance with Rule 1038 [trial without jury].")

4. Plaintiff acknowledges that it committed a mathematical error of $.18 in calculating the deficiency due. (N.T., 3/17/09, at 78, pl.'s resp. br. in opp'n to defs.' mot. for post-trial relief, at 2, n.1.)

the lower court's direction of December 15, 2009,[5] filed their statement of errors complained of (Pa.R.A.P. 1925(b) statement), which set forth the following issues for appellate review:

"(a) The court erred as a matter of law by deducting from the fair market value of the property sold at execution the amount of $44,969, being the amount expended by the petitioner, St. Edmonds Federal Savings Bank, subsequent to the execution sale, in order to complete the construction of the residence purchased by the petitioner at the execution sale and in order to obtain a certificate of occupancy for the residence.

"Said deduction is not a deduction permitted by the Deficiency Judgment Act. The expenditure made by the petitioner in order to complete the construction and obtain a certificate of occupancy is not a prior lien; is not a tax or municipal claim; is not an item that was paid at the distribution on the sale; and, is not a cost of the execution sale. The word 'costs' as is set forth is not defined in the Act (42 Pa.C.S. §8103 et seq.), nor is the word defined in Pa.R.C.P. 3276 et seq., and therefore the word 'costs' must be defined according to its common and approved usage. *Gregory v. Harleysville Mutual Insurance Co.,* 374 Pa. Super. 33, 37, 542 A.2d 133, 135 (1988). Recoverable costs are the costs of proceedings in court. Costs not incurred in the court action are recoverable only by statutory authority. *Gregory, ibid.* The cost to complete the construction of the residence was not a cost of proceedings in court and is not authorized

5. The undersigned initially issued an order dated July 27, 2009, requesting that the defendants submit their 1925(b) statement, but that order was apparently misplaced by the Montgomery County prothonotary.

by the Deficiency Judgment Act. Thus, the $44,969 should not have been included to reduce the fair market value of the property and said amount should be deleted from the amount of the deficiency judgment entered against the defendants/appellants. See *People First National Bank & Trust Co. v. Hume,* 50 D.&C.2d 141 (Allegheny Cty. 1968).

"(b) Despite the fact that the defendants/appellants failed to petition the court to open the confessed judgment, the court, in the deficiency judgment action, manifestly abused its discretion and erred, as a matter of law, by refusing to allow the defendants/appellants to offer evidence to prove that the amount of the attorney collection fee of $323,815, which was included in the judgment confessed against the defendants/appellants, was obtained by the plaintiffs/appellees by the commission of fraud, on both the defendants/appellants and the court; was grossly excessive; was unlawful; and, was contrary to the written agreement of the parties.

Said evidence would have allowed the court and required the court to amend or modify the amount of the attorney collection fee to which the plaintiff/appellee was entitled to the sum of $5,000. See *Lance v. Mann,* 360 Pa. 26, 27-28, 60 A.2d 35, 36 (1948); *PNC Bank v. Bolus,* 440 Pa. Super. 372, 378-79, 655 A.2d 997, 1000 (1995); *Stephenson v. Butts,* 187 Pa. Super. 55, 59-60, 142 A.2d 319, 321 (1958); *Providence Association v. Wrobel,* 77 Montgomery County L.R. 53, 56 (1960).

## DISCUSSION

The scope of review in a deficiency judgment proceeding is limited to determining "whether sufficient evidence

exists to sustain the trial court's order, or whether the court committed a reversible error of law." *First Federal Savings & Loan Association of Carnegie v. Keisling,* 746 A.2d 1150, 1153-54 (Pa. Super. 2000) (quoting *Citicorp Mortgage Inc. v. Morrisville Hampton Village Realty Ltd. Partnership,* 456 Pa. Super. 338, 342, 690 A.2d 723, 725 (1997)). The purpose of Pennsylvania's Deficiency Judgment Act is "to relieve a debtor of further personal liability to the creditor, if the real property taken by the creditor on an execution has a 'fair market value,' as of the date of the execution sale, sufficient so that the creditor may dispose of the property to others . . . without a net loss to the creditor." *Citicorp Mortgage Inc. v. Morrisville Hampton Village Realty Ltd. Partnership,* 456 Pa. Super. at 342, 690 A.2d at 725 (quoting *Cheltenham Federal Savings & Loan Association v. Pocono Sky Enterprises Inc.,* 305 Pa. Super. 471, 479, 451 A.2d 744, 748 (1982)).

In this case, the defendants assert that the trial court erred in essentially two different respects, the first of which centers upon the trial court's assessment of the pertinent provisions of the Deficiency Judgment Act which provide the following:

"*(a) General rule.*—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and *costs* and the judgment creditor seeks to collect the balance due on said judgment, interest and *costs,* the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplemen-

tary proceeding in the matter in which the judgment was entered. If the judgment was transferred from the county in which it was entered to the county where the execution sale was held, the judgment shall be deemed entered in the county in which the sale took place. . . ."

The Act continues with detailed procedural instructions, as follows:

*"(c) Action on petition.—* . . .

"(2) If an answer is filed controverting the averment in the petition as to the fair market value of the property, but no testimony is produced at the hearing supporting such denial of the fair market value, the court shall determine and fix as the fair market value of the property sold the amount thereof alleged in the petition to be the fair market value.

"(3) If an answer is filed alleging as the fair market value an amount in excess of the fair market value of the property as averred in the petition, the judgment creditor may agree to accept as the fair market value of the property the value set up in the answer and in such case may file a stipulation releasing the debtors and the owners of the property affected thereby, from personal liability to the judgment creditor to the extent of the fair market value as averred in the answer, less the amount of any prior liens, costs, taxes and municipal claims not discharged by the sale, and also less the amount of any such items paid at distribution on the sale.

"(4) If an answer is filed and testimony produced setting forth that the fair market value of the property is more than the value stated in the petition, the court shall hear evidence of and determine and fix the fair market value of the property sold.

"(5) After the hearing, if any, and the determination by the court under paragraph (1), (2) or (4) of the fair market value of the property sold, then, except as otherwise provided in subsection (f), the debtor shall be released and discharged of such liability to the judgment creditor to the extent of the fair market value of said property determined by the court, less the amount of *all* prior liens, *costs,* taxes and municipal claims not discharged by the sale, and also less the amount of any such items paid at the distribution on the sale, and shall also be released and discharged of such liability to the extent of any amount by which the sale price, less such prior liens, costs, taxes and municipal claims, exceeds the fair market value as agreed to by the judgment creditor or fixed and determined by the court as provided in this subsection, and thereupon the judgment creditor may proceed by appropriate proceedings to collect the balance of the debt." 42 Pa.C.S. §8103(a)-(c). (emphasis added)

As set forth above, section 8103(c)(5) of the Deficiency Judgment Act specifically provides for the inclusion of "all . . . costs not . . . discharged by the sale . . . ." 42 Pa.C.S. §8103(c)(5). In addition, at the hearing on the plaintiff's petition to fix fair market value, Mr. Charles F. Miller, the plaintiff's executive vice president, chief lending officer and credit officer, testified that to obtain the requisite certificate of occupancy, the plaintiff spent $44,969. (N.T., 3/17/09, at 69-70, 72-73.)

Moreover, the defendants' own expert, Mr. Eric Benson Baumholtz, a certified residential real estate appraiser, testified that, while he did not have an opportunity to inspect the interior of the property, the "client reported that the cost to complete . . . [certain unfinished]

items in order to obtain a certificate of occupancy was $40,000," thereby lending credence and an indicia of legitimacy to the plaintiff's claim for costs amounting to $44,969. (N.T., 3/17/09, at 59.) Given the testimony provided by both Mr. Miller and Mr. Baumholtz regarding the costs necessary to obtain a certificate of occupancy for the property, sufficient evidence exists to support both the June 22 order denying the defendants' motion for post-trial relief and the undersigned's order of March 18, 2009 fixing fair market value and determining the deficiency due.

The defendants' second contention of error asserts that, despite their own admissions that they "failed to petition the court to open the confessed judgment" and that the time for such objections "has long passed," the trial court erred by excluding evidence that the attorney's fees contained in the confessed judgment were excessive and by failing to reduce those fees. (Defs.' 1925(b) statement, at 3; N.T. 3/17/09, at 21.)

Pursuant to Pa.R.C.P. 2959(a)(3), where written notice of a confession of judgment is served upon the petitioner, the petition must then be filed within "30 days" after such service, unless the petitioner can demonstrate compelling reasons for his or her delay in seeking relief. hn this case, the disputed attorney's fees totaling $323,815.12 were initially set forth in the plaintiff's complaint in confession of judgment filed on July 25, 2008. The defendants, however, neglected to raise any objection to the assessment of attorney's fees until February 27, 2009, when they filed an answer to the plaintiff's petition to fix fair market value of real property, requesting, in addition, that the trial court reduce the judgment entered on July 25, 2008. Having failed to avail

themselves of the procedural safeguards provided in Pa.R.C.P. 2959 in a timely manner by petitioning the court to strike off or open the judgment, the defendants have waived any and all defenses or objections to the confessed judgment long since entered of record and which might otherwise have been properly addressed prior to the execution, levy and subsequent sale of the defendants' property occasioned by the latter's admitted default. See Pa.P.C.P. 2959(c). Indeed, as amply demonstrated at the hearing of this matter, sufficient evidence was produced to support the trial court's findings and entry of a deficiency judgment in the amount stated in its order of June 22, 2009. The testimony presented in the March 17 hearing clearly established that the plaintiff's costs of $44,969 were legitimate and incurred in response to its need to obtain the certificate of occupancy required to market and sell the property in order to recoup he losses occasioned by the defendants' default. These kinds of expenses are precisely those which are intended to be recoverable under the Deficiency Judgment Act as a deductible expense.

## CONCLUSION

For all of the aforementioned reasons, the trial court believes that the order, dated June 22, 2009, denying the defendants' motion for post-trial relief, should be affirmed.